[Cite as *State v. Betts*, **2017-Ohio-2824**.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2016 CA 00178 |
| CLIFFORD BETTS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Canton Municipal
Court, Case No.  2016 TRC 04548


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    May 15, 2017


APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

JOSEPH MARTUCCIO          RICHARD DRAKE
CANTON LAW DIRECTOR          116 Cleveland Avenue NW
TYRONE D. HAURITZ          Suite 303
CANTON CITY PROSECUTOR          Canton, Ohio  44702
218 Cleveland Avenue SW
Canton, Ohio  44702

*Wise, John, J.*

**{¶1}** Appellant Clifford Betts appeals his OVI conviction entered in the Canton Municipal Court, Stark County, following a jury trial.

**{¶2}** Appellee is the State of Ohio.

### STATEMENT OF THE FACTS

**{¶3}** The relevant facts leading to this appeal are as follows:

**{¶4}** On June 20, 2016, at approximately 2:23 a.m., Trooper Carlos Castellanos, of the Ohio State Highway Patrol, noticed a silver BMW driving near 12th Street in the City of Canton. (T. at 72-73). Trooper Castellanos noticed the vehicle because the high beams were activated, and it did not have a front license plate. (T.at 73). The trooper initiated a traffic stop and made contact with the driver, Appellant Clifford Betts. (T. at 73).

**{¶5}** Trooper Castellanos approached the vehicle and spoke to the driver. While speaking to Appellant, he could smell the odor of consumed alcohol emitting from the vehicle. (T. at 73). The trooper asked Appellant for his license and registration. (T. at 74). Appellant stated that he did not have his license with him because he left his wallet at home. *Id.* Trooper Castellanos observed that when Appellant attempted to retrieve his registration from the glove box, he fumbled with his keys and was unable to hold onto them. *Id.* Based on these observations, the trooper asked Appellant to step outside of the vehicle to perform standardized field sobriety tests. *Id.*

**{¶6}** Once Appellant was outside of the vehicle, Trooper Castellanos could still smell the odor of consumed alcohol emitting from Appellant's person. *Id.* He described the odor as a "moderate level of alcohol." (T. at 75).  In addition to the odor of alcohol, the trooper observed Appellant's eyes to be red and watery. *Id.*

**{¶7}** Trooper Castellanos positioned Appellant on the driver's side front right tire of his cruiser and turned off the front emergency lights in order to administer the first field sobriety test, the Horizontal Gaze Nystagmus (HGN) test. (T. at 75-76). The trooper first checked for lack of smooth pursuit. (T. at 79). The trooper explained lack of smooth pursuit - if you were to have a piece of glass and you have a marble on your glass, a person that's not been drinking or intoxicated, if I were to roll that marble across the glass it would roll smoothly. If you have an individual that's impaired or drinking, basically you're going to take that marble and put it on a piece of sandpaper ... That marble is going to be jerking across that sandpaper. *Id.* During this test, the trooper observed lack of smooth pursuit in both eyes of Appellant for a total of two clues. (T. at 80).

**{¶8}** Next, the trooper checked for nystagmus at maximum deviation. *Id.* During this test, the trooper brings the stimulus out to forty-five degrees, where a person is looking out of the corner of their eyes. *Id.* "An individual that hasn't been drinking or not impaired, you're going to ... look over there for a time. Your eye's not going to do anything or move. A person that's impaired, their eyes are going to involuntary jerk back and forth." (T. at 80-81). During this test, Trooper Castellanos observed lack of nystagmus at maximum deviation in both eyes of Appellant, for a total of two clues. (T. at 81).

**{¶9}** Finally, the trooper checked for onset of nystagmus prior to forty-five degrees. *Id.* Here, the trooper brings the stimulus out at a pace of four seconds, and checks for jerking of the eye before getting out to maximum deviation. *Id.* In this case, the trooper observed Appellant's eyes jerking prior to forty-five degrees. (T. at 82-83). The National Highway Traffic Safety Administration (NHTSA) manual was presented, which states, "the higher the BAC the sooner jerking will start as the eyes moves toward the

inside. Jerking will start as the eye moves toward the side. If jerking begins prior to forty-five degrees that person's BAC could be .08 or above." (T. at 83).

{¶10} In total, the trooper observed two clues in each eye for a maximum total of six clues. (T. at 84). The NHTSA manual was presented, which states, "if you observe four or more clues it is likely the subject's BAC is at or above .08." *Id.*

{¶11} Next, the trooper administered the walk-and-turn test. (T.at 86). Trooper Castellanos explained the instructions, and Appellant stated that he could take this test. (T. at 85-86). He described Appellant's performance on this test:

> During the instruction phase after I placed him on line, he lost his balance and stepped off the line and then I had him re-step on the line. He didn't touch heel to toe on all nine steps. He stepped to the side off line. He raised his arms above the six inches and he took the incorrect number of steps, um, on the last nine he took more than nine steps during the test. (T. at 86).

{¶12} He did not feel that Appellant's alleged medical impairment, arthritis, affected the results of this test because Appellant was able to walk normally back to the patrol car. (T. at 87). The trooper testified that seventy-nine percent (79%) of the time if you observe a minimum of two clues on this test the individual is going to be a .08 BAC or higher. (T.at 87).

{¶13} Trooper Castellanos did not administer the one-leg stand test because of Appellant's complaints of arthritis and bad knees. (T. at 87). Based on his interactions with Appellant, the trooper determined that Appellant was under the influence of alcohol and was too impaired to be operating a vehicle. (T. at 92).

**{¶14}** Trooper Castellanos arrested Appellant and took him to the post for a chemical test. (T. at 95). He read the test and refusal consequences on the 2255 form to Appellant, which Appellant stated that he understood. (T. at 95). The trooper asked Appellant to provide a chemical sample in the form of a breath test, and Appellant stated that he wasn't going to provide a breath sample. (T. at 95-96). The 2255 form is signed by Trooper Castellanos and a witness, dispatcher Wendell. (T. at 97). Appellant refused to sign the form. (T. at 97).

**{¶15}**  As a result of the above, Appellant was cited for OVI, Display of Plates, and No Seat Belt.

**{¶16}**  On June 22, 2016, Appellant was arraigned in Canton Municipal Court.

**{¶17}**  On June 28 and August 2, 2016, pre-trials were held.

**{¶18}**  On August 31, 2016, a jury trial commenced in this matter.

**{¶19}**  At trial, the jury heard from two witnesses: Trooper Castellanos testified for the State, and Titnasha Robinson testified for the defense.

**{¶20}**  Trooper Castellanos' testimony is set forth above.

**{¶21}**  Appellant's friend, Ms. Robinson, testified that she has known Appellant for years, and the two had previously dated. (T. at 118). She recalled that on the night in question, Appellant came to celebrate with her after the Cavaliers won the NBA finals. (T. at 118). Ms. Robinson stated that Appellant did not drink alcohol in her presence, and she did not believe he had been drinking earlier. (T. at 119). However, she was not aware of where he was coming from or what he did prior to picking her up. (T. at 120).

**{¶22}** At the close of State's evidence, Appellant moved for a Rule 29 acquittal. (T. at 115). Appellant renewed his motion for acquittal at the close of the defense case. (T. at 122-123).

**{¶23}** The jury deliberated and returned a verdict of guilty of OVI, and the trial court entered a finding of guilty on the Display of Plates charge.

**{¶24}** Appellant now appeals, raising the following Assignments of Error:

<u>ASSIGNMENTS OF ERROR</u>

**{¶25}** "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL AS THE CONVICTION FOR OPERATING A MOTOR VEHICLE WHILE INTOXICATED WAS SUPPORTED BY INSUFFICIENT EVIDENCE.

**{¶26}** "II. THE JURY FUNDAMENTALLY LOST ITS WAY AS DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**I., II.**

**{¶27}** We will address Appellant's First and Second Assignments of Error simultaneously as they raise common and interrelated issues.

**{¶28}** In his two Assignments of Error, Appellant claims his OVI conviction was against the manifest weight and sufficiency of the evidence. We disagree.

**{¶29}** In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. *See, e.g., State v. Carter,* 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974 (1995). An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond

a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶30}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶31}** Here, Appellant was convicted of OVI, in violation of R.C. 4511.19(A)(1)(a) and refusing a chemical test, in violation of R.C. 4511.19(A)(2), which read, in order:

(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

* * *

(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:

* * *

(b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

**{¶32}** Appellant herein claims that his conviction is insufficient and against the weight of the evidence because 1) the trooper did not observe any impaired driving, 2) the field sobriety tests were compromised by Appellant's disability, 3) the trooper failed to administer the field sobriety tests in view of the dashcam, and 4) the 2255 form was completed in a "rushed manner".

**{¶33}** Upon review of the evidence set forth above and the trial testimony of Trooper Castellanos presented herein, we find there was sufficient evidence offered to demonstrate Appellant operated a vehicle intoxicated and refused to submit to a chemical breath test. The testimony demonstrates that the stop occurred at 2:23 a.m. Trooper Castellanos observed a moderate odor of alcohol on Appellant's person. The trooper observed Appellant fumbling with his keys. Appellant admitted to consuming alcohol earlier in the evening. Appellant indicated the majority of clues on the Standardized Field Sobriety Tests administered and upon arrival at the Highway Patrol post, he refused the chemical breath test.

**{¶34}** Accordingly, we find the trial court did not err in overruling Appellant's motion for Criminal Rule 29 acquittal as the jury's verdict was supported by sufficient evidence and its verdict was not against the manifest weight of the evidence.

**{¶35}** Accordingly, Appellant's Assignments of Error are overruled.

**{¶36}** For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is affirmed.

By: Wise, John, J.

Delaney, P. J., and

Baldwin, J., concur.

JWW/d 0511